## Jones v. Van Bever.

(Decided March 26, 1915.)

### Appeal from Bell Circuit Court.

1. Pleading—Defect and Objections—Arrest.—The allegation in a petition that an arrest was made by a deputy sheriff in his official capacity, is a mere legal conclusion or inference, without the facts on which it was founded, and adds nothing to the petition.

2. Officers—When Sureties on Bond Not Liable for Wrongful Act.— Where an officer having no writ in his hands, falsely asserts that he has, and commits a trespass under such assumed authority, or where he acts without any such assumption simply as an officer, and commits a wrongful act, the sureties on his official bond are not liable unless made so by statute.

3. Arrest—Liability of Officer in Making—Criterion.—Without regard to the distinction between acts done by virtue of office, and acts done under color of office, the practical criterion of the liability of an officer in making an arrest, is, whether the assault by the officer was committed in the course of an attempt to serve or execute a writ or process and as a means to that end.

4. Officers—Official Acts.—Official acts as applied to the conduct of ministerial officers, are only such as are done in the execution of some legal process, or of some positive command of the law.

5. Arrest—Invalid Warrant—Liability of Officer in Making Arrest.—
An officer is liable where he makes an arrest under a warrant
that is invalid or void; or where the court has no jurisdiction; or
where he arrests for a felony without a warrant on suspicion; or
where he makes an arrest with a warrant for a breach of the
peace not committed in his presence; or where he arrests not "on
view" without a warrant under a city ordinance; or where he
arrests the wrong party; or where he arrests the right party
under a warrant in the wrong name.

6. Arrest—Officers.—The test as to whether an officer is acting by
virtue of his office is, whether he is either armed with a valid
writ, or has authority to make the arrest without a writ, under a
statute.

7. Arrest—Liability of Sheriff For Act of Deputy.—In order to render
a sheriff liable for the act of his deputy, the act of the deputy must
be done by virtue of his office as deputy; and in order for the
deputy's act to have that character, it must be done in an attempt
to serve or execute a writ or process, and as a means to that end,
or in acting under a statute giving him the right to arrest without
a writ or process; otherwise he is acting as an individual.

PATTERSON & INGRAM for appellant.

CHARLES I. DAWSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—
Affirming.

This appeal is presented from a judgment sustaining demurrers to the two paragraphs of the petition, and dismissing it upon plaintiff's failure to amend.

At the times mentioned in the petition, the appellee Robert Van Bever was Sheriff of Bell County, and J. F. McCoy and A. V. Haynes were his regularly appointed deputies.

After reciting the qualification of Van Bever as sheriff, and the appointment and qualification of McCoy and Haynes as his deputies, the first paragraph of the petition reads as follows:

"Plaintiff further states that said deputy sheriffs, in July or the first of August, 1913, in their official capacity, as aforesaid, and by virtue of their said office as deputy sheriffs, at Arjay, in Bell County, Kentucky, did unlawfully and without warrant or process from any court and without reason to believe that plaintiff had committed a felony and when he had committed no offense in their presence, arrest the plaintiff at said place in the presence of divers and sundry people and then and there

by virtue of their said official capacity, did forcibly and unlawfully and against the will and consent of the plaintiff, drag and force him to enter a train and go with them from said place to Pineville, Kentucky, and there in the presence of divers and sundry people they took him into the presence of Charles I. Dawson, County Attorney, where by advice of said county attorney, they released the said plaintiff, and by said acts the said plaintiff was greatly humiliated and caused to suffer great mental anguish and distress all to his damage in the sum of one thousand dollars."

The second paragraph of the petition, as amended, is a substantial copy of the first paragraph above set out, except that it sets up and relies upon a second arrest made by McCoy and Haynes in August or September, 1913; and that instead of being released, plaintiff was delivered to one Yeary for the purpose of being transported by Yeary into the State of Tennessee, against plaintiff's will and consent.

The trial judge sustained the demurrers and dismissed the petition, upon the theory that it showed the deputy sheriffs were acting without any authority of law when they arrested the plaintiff; and, that they were doing something not required of them in the performance of their duties as officers.

Moreover, some stress is laid upon the fact that it is shown by the second paragraph of the petition that the plaintiff was not arrested for any violation of the laws of the State of Kentucky; and that if he was arrested for any offense, it was for an offense committed in the State of Tennessee. The suit is against the sheriff only.

The sole question, therefore, for decision in this case is, was the action of the deputy sheriffs, in arresting Jones at a time when he had committed no offense in the presence of the deputy sheriffs, and when they had no warrant for his arrest, and no reasonable ground to believe he had committed a felony, such an official act of the deputies as made their principal liable therefor in damages?

The official bond of the sheriff, given under Section 4556 of the Kentucky Statutes, provides, among other things, that he "shall, by himself and deputies, well and truly discharge all the duties of said office," while Section 4558 of the Kentucky Statutes provides that the sheriff's official bond "may be put in suit, from time to

time, at the cost of any person injured by the acts or omissions of the sheriff, or any of his deputies."

By Section 4560 of the Kentucky Statutes, it is further provided:

"Every sheriff may, by and with the approval of the county court, appoint his own deputies, and may revoke the appointment at his pleasure. Before any deputy shall proceed to execute the duties of his office he shall take the oath required to be taken by the sheriff."

The gist of the ruling of the trial court was, that the acts of the deputies as set forth in the petition, were not official acts; that their principal, the sheriff, was not responsible for the acts of his deputies that were not done in their official capacity or by virtue of their said office; and that the acts complained of were not done in their official capacity or under color of their office, or by virtue thereof.

And, although the petition is careful to say the arrests were made by Haynes and McCoy in their official capacities as deputy sheriffs, the trial court held, and we think properly, that the subsequent allegations as to the manner and occasion of the arrests effectually negatived the former allegation, by showing that the arrests were not made by the deputies in their official capacities, or by virtue of their office. No judgment is asked against the sureties on the sheriff's bond.

The cases in which an officer may make an arrest are specified by Section 36 of the Civil Code of Practice, as follows:

"A peace officer may make an arrest:

"1. In obedience to a warrant of arrest delivered to him;

"2. Without a warrant, when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony."

See also Madden v. Meehan, 151 Ky., 220.

If he makes an arrest in any other way, it is not authorized by law, and is consequently his individual and not his official act.

The allegation that the arrests were made by the deputies in their official capacities, is a mere legal conclusion or inference, and adds nothing to the petition.

This question was passed upon by this court in Commonwealth v. Cole, 7 B. M., 250, 46 Am. Dec., 506, which

was an action against a constable, and his sureties, to recover for alleged breaches of the official bond of the constable.

In that case, the court said:

"The first breach is, that 'the relator was compelled to pay to said Cole the sum of $95.00, which Cole, by color of his office as aforesaid, wrongfully collected from the said Richardson and refused to account for,' &c. There being no allegation of fact to aid the general phrases used in this statement, we are clearly of opinion that it is too vague and indefinite to answer the purpose of a declaration. It does not appear how the relator was compelled to pay, nor what was the particular act complained of, and the statement furnishes to the court no means of determining whether the collection was made by color of office or not. Nor does it furnish to the defendants the requisite information of the charge or complaint relied on. It is a mere statement of legal conclusions or inferences, without the facts on which they are founded, and was properly adjudged insufficient."

The question again arose in Hawkins v. Thomas, 3 Ind. App., 399, 407, which was a suit against a United States Marshal, and the sureties upon his bond, for an alleged illegal arrest by a deputy marshal.

In speaking of the question of pleading before us, the court said:

"In the complaint in the case before us, the only allegation upon this subject is the general averment that the marshal and his alleged deputy were acting illegally, but under color of office. It does not appear that any writ or process of any kind had issued to either of them, or that any offense had been committed against the Federal laws, or that they ever claimed such to be the case. The averment that the officer was acting under color of authority is a mere conclusion, and is not sufficient to show that the injury resulted from an official act.

"It was so decided in Commonwealth v. Cole, 7 B. Mon., 250, and in speaking of the legal effect of such general averment the court said: 'It is a mere statement of legal conclusions or inferences, without the facts on which they are founded, and was properly adjudged insufficient.'

"So, in our own State, the rules of pleading require that facts be particularly alleged which show that the injury complained of was the result of official miscon-

duct. State, ex rel. v. Shackleford, 15 Ind., 376; Major v. State, ex rel., 8 Blackf., 71; Jones v. State, ex rel., 5 Blackf., 492.

"Indeed, an examination of the many cases decided by our Supreme Court upon the question of official responsibility shows the uniform practice to be, to specifically plead facts imposing a duty upon the officer to act, as furnishing the only basis of the liability of the surety."

In Eaton v. Kelly, 72 N. C., 110, a sheriff represented that he had an execution authorizing him to sell certain real estate, and assumed to sell the same thereunder, in regular manner, at the court house door. An attendant at the sale, relying upon the sheriff's representation concerning his authority, bought the property and paid for it. In fact, the sheriff had no execution and the sale was void, and the purchaser sued him upon his bond to recover the money paid by him; but the court held that the sheriff acted without authority of law in selling the property, and the wrong could not be redressed in an action upon his bond.

The same principal was applied, under somewhat similar circumstances, in Jewell v. Mills, 3 Bush, 62.

In considering a case of this character, we should not overlook the fact that while the deputy is personally liable for any misconduct of which he may be guilty, his principal, the sheriff, is only liable when the deputy acts officially, for and on behalf of his chief.

This idea was well expressed by Chief Justice Marshall, speaking for the court, in Commonwealth v. Cole, *supra,* as follows:

"It is to be recollected, that the question is not how far the constable may be individually responsible for his own acts, but how far his securities may be responsible for them. As by executing the official bond with him, they have not only evinced their confidence in his capacity and other qualifications for the office, but have enabled him to assume the character and rights belonging to it, they may perhaps be justly held responsible for such acts within the general range of his powers, as (though without legal authority in the particular instance), he does in the name and by color of the office, and of the rights incident to it; but for acts which in their nature are wholly beyond the office, or for acts which though within the general powers of the office, are

neither actually authorized in the particular case, nor
pretended to be done in virtue of official authority; that
is, for acts done as a private individual, they cannot be
made responsible on the bond.''

In the note in 21 L. R. A., 738, the general rule as to
the liability of sureties for the acts of an officer is stated
as follows:

''The cases generally support the rule that where an
officer having no writ in his hands falsely asserts that he
has, and commits a trespass under such assumed author-
ity, or where he acts without any such assumption
simply as an officer and commits a wrongful act, the
sureties on his official bond are not liable unless under
a statute as that of Alabama.''

The relation of a surety to and his liability for the
acts of his principal, are analagous to the relations of
a sheriff to his deputy.

It is elementary that no one except the trespasser is
liable for the individual wrong of the trespasser; and
the fact that he claims to be acting for another does not
make that person responsible or liable in any way. The
sheriff is liable for the act of his deputy only when the
deputy commits a wrong while acting for his chief.

So, the question always is, was the act of the deputy
which is complained of, done by him in his official capac-
ity or by virtue of his office? The difficulty arises in de-
termining whether an act is done by virtue of one's office.

In the note found in 8 L. R. A. (N. S.), 1223, the
editor says:

''The distinction between acts done by virtue of
office and acts done under color of office, has been recog-
nized in some of the cases. Without regard to that dis-
tinction, however, the practical criterion of liability
seems to be, under the authorities, whether the assault
was committed in the course of an attempt to serve or
execute the writ or process and as a means to that end.''

In making an arrest the statute carefully specifies
the cases in which it may be done, either with or without
a warrant. It cannot be done otherwise. This certainty
is the result of the long contest in England against arbi-
trary arrests.

There can be no doubt of a sheriff's liability for the
act of his deputy where the deputy abuses his writ or
process. This abuse of process is most generally found
in cases where the deputy, armed with a writ, arrests the

wrong man by mistake; or where he has an execution for the goods of one man, and by mistake seizes the goods of another; and the innumerable cases of that character.

The general rule is stated as follows in the note summarizing the result of the cases, in 51 L. R. A., 225:

"It may be said that an officer is not liable in trespass and false imprisonment for making an arrest under a warrant where it is valid on its face and the court has jurisdiction, or where the warrant is only irregular. He is not liable for making an arrest without a warrant where he has reasonable grounds to believe that a felony has been committed, or where a breach of the peace is committed 'on view'; or where he arrests on view for a breach of a city ordinance and a statute authorizes such an arrest; or where he makes an arrest for other misdemeanors on view under statutory authority. He will not be liable for the use of ordinary force to restrain the prisoner.

"But an officer will be liable where he makes an arrest under a warrant that is invalid or void; or where the court has no jurisdiction; or where he arrests for a felony without a warrant on suspicion; or where he makes an arrest without a warrant for a breach of the peace not committed in his presence; or where he arrests not 'on view' without warrant under a city ordinance. He will be liable where he arrests without warrant for a past misdemeanor; or where he makes an arrest outside of his local jurisdiction; or where he unreasonably detains and fails to take the prisoner before the proper court; or where he takes him before an improper court. He will be liable where he arrests the wrong party; or where he arrests the right party under a warrant in the wrong name. He cannot arrest for one offense and justify for another."

But in the cases of that class where the officer was held liable for the act of his deputy, the deputy was acting under a writ or process of court, and the sheriff's liability came about from an abuse of that process. His action under a writ or process made his act an official act.

This clear distinction runs through the rulings of the courts in all the well considered cases, although in some of them the courts have not clearly expressed the reason for the ruling.

Confining ourselves to the cases presenting the question of the liability of the officer for the act of his deputy, we will briefly examine such cases as we have been able to find.

In Shields v. Pflanz, 101 Ky., 407, a sheriff was held liable in damages for the misconduct of his deputy for maliciously and unnecessarily putting handcuffs on a prisoner while conveying him, under a warrant, from one court to another.

In that case the circuit court had sustained a demurrer to the petition; but, in reversing that judgment, this court said:

"Taking the averments of the petition as amended as true, which must be done on demurrer, it appears that Donahue was deputy sheriff under appellee, and that *by virtue of the writ*, which he had authority to execute, he had arrested the appellant and for a time placed him in custody of the jailer and afterwards took him out for the purpose of taking him to Nelson County in obedience to the writ, and while appellant was in his custody the deputy sheriff perpetrated the wrong and injuries complained of. It is therefore clear that the acts complained of were inflicted by the deputy sheriff under color of his office, and while in the discharge of an official act."

In Johnson v. Williams, 111 Ky., 289, 54 L. R. A., 220, 98 Am. St. Rep., 416, T. H. Johnson, the sheriff, was sued for the killing of Williams by Ernest Johnson and H. C. Judge, deputies under T. H. Johnson. Browder had murdered a man, and the deputies were sent to arrest him for the crime. Under a mistaken belief that Williams was Browder, for whose arrest they had a warrant, and that the killing of Williams was necessary to prevent his escape, the sheriff was held liable for the acts of his deputies.

That this liability was rested upon the fact that the officers acted under a warrant which made their acts official acts, is made plain by the following language of the court:

"The law which gives an officer the right to kill an escaping felon certainly requires him to know that he is the felon, not an innocent party, whose life he is attempting to take. The question here is quite a different one from what we would have if the deputy sheriffs had shot at Browder while escaping, and killed Williams. In the latter case they would have been shooting at the right

man, if the facts justified it, but here they shot at and killed an innocent man. While they did an unlawful act, still they were acting in their official capacity. *They had the authority as deputy sheriffs to arrest Browder,* but in the exercise of that authority they acted improperly, abusing the confidence which the law imposed in them."

Again, in Commonwealth v. Hurt, 23 Ky. L. R., 1171, 64 S. W., 911, it was held that a petition for damages against a sheriff and his sureties on his official bond which alleged simply that while a deputy sheriff held his office he killed the deceased, and failed to allege that the deputy sheriff was acting by virtue of his office in the execution of a process, or doing an act in his official capacity at the time of the killing, was insufficient.

In its opinion, the court said:

"It is not averred in the petition that the deputy was acting by virtue of his office in the execution of a process, or doing anything in his official capacity at the time of the killing, or that it was done in any attempt to discharge an official duty. A pleading should be construed strongly against the pleader. The averment of the petition is simply to the effect that while he held the position of deputy sheriff he killed the deceased. One holding the position of sheriff or deputy might kill a man and still not do it in the performance of an official act. The killing might have no connection whatever or relation to the discharge of his official duty."

In Brown v. Weaver, 76 Miss., 7, 42 L. R. A., 423, 71 Am. St. Rep., 512, it was held that an officer had no right to shoot one guilty of a misdemeanor to prevent his escape, and that if he was unjustifiably shot by a deputy in attempting to prevent his escape after his arrest, *under a warrant,* when he was merely running away, without committing any violence, he could maintain an action for damages against the sheriff.

Likewise, in Thomas v. Kinkead, 55 Ark., 502, 15 L. R. A., 558, 29 Am. St. Rep., 68, the action was against a constable to recover damages for the killing by the constable's deputy, of a person under arrest, to prevent his escape after arrest, under a warrant charging a misdemeanor. It was held that the deputy's act was wrongful, and that the constable was liable for his deputy's wrongful act under the warrant.

In Spencer v. Moore, 19 N. C. (2 Dev. & B. L.), 264, a deputy sheriff arrested a defendant under a *capias* from an adjoining county; and the prisoner having es-

caped and returned to the adjoining county, the deputy followed him and attempted to arrest him under the *capias* in the adjoining county. But under the law of North Carolina a defendant in a *capias* could not be arrested on the same writ after he was voluntarily suffered to escape, and the sheriff was consequently held responsible for the false imprisonment by his deputy in making the second arrest, it having been made under color of the deputy's office and the writ then in his hands.

Again, in Smart v. Button, 8 Ad. & El., 568, 2 Nev. & M. 426, it was held that a sheriff was liable for the misconduct of his deputy in arresting the plaintiff without any other authority than a writ of *fi fa* commanding him to levy on plaintiff's goods.

Perhaps the leading and best considered opinion upon the subject is that of Judge Thayer, of the United States Circuit Court of Appeals, in Chandler v. Rutherford, et al (1900), 101 Fed., 774, 43 C. C. A., 218. Rutherford was the United States Marshal for the Northern District of the Indian Territory, and McDonald was his deputy marshal. While hunting for a horse thief named Flave Carver for the purpose of arresting him, and without a warrant, McDonald arrested Chandler, supposing him to be Carver. In making the arrest McDonald shot Chandler, who thereupon sued Rutherford, the marshal, for damages for the wrongful act of McDonald, his deputy.

The statute in force in the Indian Territory, like the Kentucky Statute, authorized a peace officer to make an arrest: "(1) In obedience to a warrant of arrest delivered to him; (2) Without a warrant where the public offense is committed in his presence, or where he has reasonable grounds for believing that the person arrested has committed a felony."

After pointing out that the complaint or petition failed to show that an offense had been committed in the deputy marshal's presence when he attempted to arrest the plaintiff, or that prior to the arrest the deputy marshal had been informed that the plaintiff was Carver, the horse thief, the court said:

"When an officer seeks to justify an arrest without a warrant under a statute like the one now under consideration and the act for which the arrest was made was not committed in his presence, it is manifest that he must show that he acted on information such as would

justify a reasonable man in believing that the particular person arrested was guilty of felony. Where he has no such information, but nevertheless makes an arrest, he acts entirely outside of the line of his duty and authority; as much so, we think, as an officer who arrests without a warrant where there is no law permitting an arrest without process. We are of opinion, therefore, that the facts stated in the complaint will not warrant a judgment against the marshal and his sureties in an action on the marshal's bond. The liability on the bond, by the terms whereof the sureties agreed that the marshal and his deputies should faithfully perform the duties of his office, is purely contractual. Such an obligation is materially different from an undertaking by the sureties to be responsible for any wrongful act of the marshal and his deputies which they may commit under the pretense that they are discharging an official duty. When the marshal's deputy undertook to arrest the plaintiff, he had no information, so far as the case discloses, which either required or authorized him as an officer to lay hands on the plaintiff, much less to make use of a deadly weapon for the purpose of arresting him. The deputy's act on the occasion in question was not only unauthorized, but it did not have the appearance of being done in obedience to the mandate of the law; in other words, he did not act *colore officii* in any such sense or under such circumstances as will render the sureties responsible.''

The effect of the decision was, that if the marshal was not liable for the act of his deputy, the marshal's sureties could not be liable for the act of the deputy, and the demurrer was therefore sustained to the petition which sought to make the marshal and his sureties liable.

Elsewhere in the opinion, Judge Thayer said:

''It is now well settled, although the proposition was at one time disputed, that the sureties on the official bond of a marshal, sheriff, constable, or other ministerial officer may be held liable when the officer having process in his hands commanding him to seize the property of one person in fact seizes the property of another. In such cases the trespass is not the act of a mere individual, but is perpetrated *colore officii,* and for that reason the act imposes a liability on the officer's sureties to the same extent as when, having a writ in his hands, he fails to execute it, or makes an excessive levy, or is guilty of some other wrongful or oppressive act in the

execution of the process. Lammon v. Feusier, 111 U. S., 17, 21, 4 Sup. Ct., 286, 28 L. Ed., 337, and cases there cited; People v. Schuyler, 4 N. Y., 173; Holliman v. Carroll's Admrs., 27 Tex., 23; Carmack v. Commonwealth, 5 Bin., 184; Forsythe v. Ellis, 4 J. J. Marsh., 299. But when an officer assumes to act under color of his office, having no writ or process whatsoever, or having process which on its face is utterly void, it seems to be the prevailing doctrine that whatever he may do under such circumstances imposes no liability on his sureties. To constitute color of office such as will render an officer's sureties liable for his wrongful acts, something else must be shown besides the fact that in doing the act complained of the officer claimed to be acting in an official capacity. If he is armed with no writ, or if the writ under which he acts is utterly void, and if there is at the time no statute which authorizes the act to be done without process, then there is no such color of office as will enable him to impose a liability upon the sureties in his official bond.''

It will thus be seen that the test as to whether the officer is acting by virtue of his office, is whether he is armed with a valid writ, or has authority to make the arrest without a writ, under a statute. If he is armed with no writ, or if the writ under which he acts is utterly void, and if there is at the time no statute which authorizes the act to be done without a writ, then the officer is not acting by virtue of his office.

In Inman v. Sherill (1911), 29 Okla., 100, the action was against Sherill, a constable, and the sureties upon his bond, for damages on account of an injury inflicted upon Inman by Sherill. The evidence having failed to show that the constable was acting under legal process, or that there was cause for arrest without a warrant, but showing that Sherill's acts constituted merely a naked trespass, it was held no action would lie upon the bond, and the trial court sustained a demurrer to the evidence and dismissed the action. From that ruling the appeal was prosecuted.

In affirming the ruling of the circuit court, the Supreme Court of Oklahoma followed the opinion of that court in Dysart v. Lurtz, 3 Okla., 601, which held that where an officer, while doing an act within the limits of his official authority, exercises such authority improperly, or exceeds his official powers, or abuses an official discretion vested in him, he becomes liable on his

official bond to the person injured; but, where he acts without any process and without the authority of his office in doing such act, he is not to be considered an officer, but a personal trespasser.

The court quoted with approval from the opinion of Judge Thayer in Chandler v. Rutherford, *supra.*

A case directly in point, is Jordon, *et al* v. Neer, (1913), 34 Okla., 400, where Pauline Neer, the widow of John Neer, deceased, sued to recover damages from Jordon, the sheriff, and Duke and Vann, his deputies, for the alleged wrongful killing of her husband by the deputies. The trial resulted in a verdict against all the defendants, except one of the bondsmen, and the defendants appealed.

Jordon, the sheriff, answered that he had nothing to do with the killing of Neer. Duke and Vann, the deputies, answered admitting that they had participated in the shooting of Neer, but that they acted only in self-defense.

In reversing the judgment, the court said:

"The plaintiff seems to have been careful, both in pleading and in the evidence, to show that at the time of the killing in which Neer lost his life, both Neer and his companions were proceeding quietly along the highway in the peace of the State, and violating no law, and that the officers had no warrant for their arrest, and that they were not committing a misdemeanor in the presence of the officers which would justify or authorize an arrest. If this is true, the two deputies, in halting or accosting the young men, could not have been in the exercise of any authority conferred on them by law, or necessary or proper to be done under authority of their office. If plaintiff's evidence is true, the deputies Duke and Vann were naked trespassers. If the defendants' evidence is true, Duke and Vann, in a civil manner, asked the young men to 'stop' or 'hold on a minute,' and were answered by shots from the revolvers of the young men, which they returned in their necessary self-defense. Under none of the proof were the bondsmen liable, because nothing done by the deputies was done by virtue of their office; and not being so done, their act, if wrongful, was not within the obligation of the bond, under a number of decisions of this court in which this rule is announced and adhered to under the doctrine of *stare decisis.*"

And, after quoting from Inman v. Sherill, *supra,* the opinion requoted, with approval, the language of Judge Thayer in Chandler v. Rutherford, *supra.*

The sheriff had asked an instruction saying there could be no recovery against him for any shooting done by his deputies, unless the sheriff was present, aiding, abetting or assisting his deputies when they did the shooting. In referring to this phase of the case, the court said:

"The court should also have given, in effect, the instruction asked by the sheriff. As to him, there was a question for the jury. There was no proof of liability upon his part because of the official relation between him and the deputies; but there is some proof, however slight, that, if the deputies were in fact in the wrong and committing a trespass, that tended to associate or connect the sheriff with the difficulty. In other words, if the shooting by the deputies was not justifiable under the circumstances, but was a trespass for which they are answerable in damages, and the sheriff was present, 'aiding, assisting, abetting or encouraging' the commission of a wrongful act, then he would be liable as an individual participant therein. Upon a new trial, if the evidence should justify it, such instruction should be given."

It was held in Holman v. Carroll, 27 Tex., 23, that while a sheriff is liable officially for seizing the property of one person on an execution against another, he is not so liable for seizing such property without any writ at all.

In Maddox v. Hudgeons, 31 Tex. Civ. App., 291, a deputy sheriff caused the arrest of Hudgeons on suspicion and without a warrant, and caused him to be put in jail. Later, the deputy sheriff released Hudgeons, who sued the sheriff for damages for the false arrest by his deputy.

In holding the sheriff was not liable for the acts of his deputy Isbell, the court said:

"The acts of Isbell were without the knowledge or consent of his principal; he was not acting or purporting to act by virtue of any warrant, and not in the performance of any duty imposed by law. In other words, his conduct was not official. The case is not believed to be one of a mere abuse of an existing authority, as are the

cases of Huffman v. Koppelkam, 8 Neb., 344, 12 Neb., 98; Clark v. Wynn, 46 S. W. Rep., 915.''

The principle is recognized in State, ex rel v. Dierker, 101 Mo. App., 642; People v. Pacific Surety Co., 50 Colo., 273; McLendon v. State, 92 Tenn., 520, 21 L. R. A. (N. S.), 738; Gold v. Campbell (1909), 54 Tex. Civ. App., 269; King v. Brown, 100 Tex., 109.

In Brown v. Wallis, 100 Tex., 546, 12 L. R. A. (N. S.), 1019, Cozart, a deputy for Brown the sheriff, shot Wallis while trying to arrest him without a warrant, and when Wallis had committed no misdemeanor in the presence of the deputy, and was not guilty of a felony.

In denying the plaintiff a right to recover from the sheriff, the Supreme Court of Texas said:

''The question to be determined, then, is: Did the evidence conduce, or tend to prove that Cozart and Allen, whom appellant, the sheriff of Clay County, had appointed his deputies, were acting in an official capacity when they undertook to arrest and search appellee? That is, did it tend to prove that they had a warrant authorizing them to arrest him, or some other person, or that he or some other person had committed a felony, or an offense against the public peace in their presence?

''We answer that there is no evidence that Cozart and Allen had a warrant authorizing them to arrest anyone, nor do the facts, as certified by the court, tend to prove that J. S. Wallis, or any other person, had committed a felony or an offense against the public peace in the presence of Cozart and Allen, or either of them.

''This court will confine itself to the facts certified in the statement accompanying the question, and, looking to that statement, we find that the evidence does not prove at what point the firing of the pistol or pistols occurred. It does not appear that it was within the hearing, or within sight of Cozart and Allen, or that they were able to discern the persons who did the firing, or the young men who were acting together.

''The evidence does not show that Cozart and Allen were acting in their official capacity at the time that they arrested Wallis and the other young men. They had no warrant, and there is no proof of any purpose on their part to enforce the law against offenders who had violated it within their view or presence.''

Hawkins v. Thomas, 3 Ind. App., 398, heretofore quoted from, is also directly in point. As above stated,

Thomas sued Hawkins, the United States Marshal for the district of Indiana, and Isaacs, his deputy, for the act of Isaacs in arresting Thomas on election day in November, 1888. After stating the rule that a surety upon an official bond is only answerable for the acts of his principal while engaged in the performance of some duty imposed upon him by law, and citing authorities in support of the rule, the court said:

"These cases are unquestionably in harmony with a large majority of the decisions upon that subject, and in each of them the unauthorized act of the officer is characteristized as *colore officii*. But the officer was acting under a valid writ, and by virtue of the mandate of the law, and the trespass consisted in an abuse of the power vested in him, and not in the performance of an act which the law did not enjoin upon him at all.

"It was an instance of exceeded, rather than usurped power. Such acts are within the express line of the sureties undertaking—that his principal shall faithfully discharge the duties of his office according to law. But where an officer, though he assumes to act as such, commits a wrong under circumstances where the law does not impose upon him any duty to act at all, the wrong is not a violation of any official duty, and consequently is not embraced within the sponsorship of the surety."

*    *    *    *

"Thus it is seen that official acts, as applied to the conduct of ministerial officers, are only such as are done in the execution of some legal process or of some positive command of the law. It follows as a logical sequence that in an action upon an official bond it is necessary to allege and prove the existence of conditions and circumstances requiring some official action on the part of the officer, and that the injury sought to be redressed was inflicted while the officer was so attempting to act, or on account of his failure to act at all."

Again, in Lewark v. Carter, 117 Ind., 206, 3 L. R. A. 440, a sheriff was held not liable for representations made by his deputy in making a sale under an execution in his hands, he having no authority, by virtue of the execution, to make any representations whatever.

Our attention has been called to the case of Hall v. Tierney, 89 Minn., 407, as being in conflict with the uniform line of authorities above quoted. An examination of that case, however, will show that it was not a suit

for the acts of the deputy, but was a suit against the sheriff and his bondsmen for an assault by the sheriff; and, although the opinion contains some language that would seem to hold that an action would lie upon the official bond for the misuse by the sheriff of his official position, although not acting under a writ, a more careful reading of the opinion shows that it was finally rested upon the fact that the sheriff had the right, under Section 7120 of the Statutes of Minnesota, to make the arrest without a warrant, and "whether a sheriff arrests under a warrant or under the authority thus given by the statute (that is, without a warrant), he acts in his official capacity. Warner v. Grace, 14 Minn., 364 (487)." Page 411.

It will thus be seen that Hall v. Tierney is not, in principle, in conflict with the general rule above announced.

From this uniform line of authority, we find the rule to be thoroughly established, that in order to render the sheriff liable for the act of his deputy, the act of the deputy must be done by virtue of his office as deputy; and in order for the deputy's act to have that character, it must be done in an attempt to serve or execute a writ or process, and as a means to that end, or in acting under a statute giving him the right to arrest without a warrant; otherwise, he is acting as an individual. In other words, when a deputy sheriff, although he assumes to act as such, commits a wrong under circumstances where the law does not impose a duty on him to act at all, the wrong is not a violation of any official duty, and is not embraced within the sponsorship of his principal.

In so ruling, the trial judge properly sustained the demurrer to the petition.

Judgment affirmed. Judge Carroll dissenting.

### DISSENTING OPINION BY JUDGE CARROLL.

The opinion holds that the sheriff is not liable for the act of his deputy unless the act is committed by the deputy in an effort to execute a valid writ or process in his hands, or under authority of some statute. The application of this principle would in a similar way limit the liability of the sureties in the bond of an officer, such as a sheriff, policeman, constable or town marshal. And so for convenience and to avoid the necessity of repeti-

tion, I will treat the question as it affects the liability of the sureties in the bond of any of the officers mentioned.

The meaning and effect of the rule laid down in the opinion is that although the officer may act and assume to act in his official capacity and be exercising power that he might lawfully exercise if he had a valid writ or process or was acting under the authority of a statute, the sureties in his bond will not be liable for his wrongful acts solely because they were not committed in the execution of a valid writ or under authority of a statute.

To this proposition I do not agree, and as it is a matter of very considerable importance, I will state the reasons for my dissent.

My contention is that the bond of any of these officers is liable for any wrongful or unlawful act committed by the officer while acting and assuming to act in his official capacity and within the scope of his official powers, although he may not have a valid process or the authority of a statute directing him to do the thing complained of. To make plain by illustration my position, it is this: If the officer, in executing a valid writ or process, exceeds his authority or abuses his power, the bond is liable. If the officer has a valid writ to arrest "A" but arrests "B," the bond is liable. If, in attempting to execute a valid process against "C," he assaults or beats or kills "D," the bond is liable. If, under an execution or other process against "E," he takes the property of "F," the bond is liable. And so, if without any process, or with a void one, and without statutory authority, the officer, while acting and assuming to act in his official capacity arrests "B," or assaults or beats or kills "D," or takes the property of "F," the bond is liable.

In using the words "in his official capacity" I mean when an officer assuming to act as an officer and not as an individual, undertakes as an officer and not as an individual to do some thing within the scope of his official powers. For example, if a town marshal should receive a telegram requesting him to arrest a certain described person on the charge of having committed a felony, and, pursuant to this telegram, and without any other information or authority, the marshal, acting and assuming to act in his capacity as marshal, and armed with the authority that the office conferred, should arrest the person described in the telegram and it de-

veloped that the person had not committed any offense whatever, the bond of the marshal should be liable to the party arrested in a suit for false arrest. Or, if a policeman in a city, acting and assuming to act in his capacity as a policeman, should wrongfully and unlawfully arrest a person who had not committed any offense, and when he did not have any writ or process authorizing the arrest, the sureties in his bond should be liable.

I will presently undertake to show that this position is not only supported by the opinions of this court but by the opinions of many other courts of last resort. But before directly taking up the authorities, I wish to give expression to the opinion that the views of a majority of this court, speaking through the Chief Justice on the liability of sureties are entirely too narrow to afford the public the protection contemplated by the bond, conditioned as most of them are, that the officer will faithfully perform his duties. I think the limitations on the liability of the bond as set out in the opinion virtually amount to a nullification of the statute requiring this class of officers to execute bond, for if the bond is to be held liable only for the conduct of the officer when he acts under the authority of a warrant or a statute, there is really no liability whatever on the bond unless the officer should commit some unlawful act in excess of the authority conferred by the process in his hands or his authority under the statute.

And so a person whose property had been wrongfully taken, or who had been wrongfully arrested, or wrongfully beaten by an officer acting and assuming to act in his official capacity and within the scope of his official powers would have no recourse on the bond if the officer did not have the authority of a valid writ or a statute.

I submit that the undertaking of the bond should not be restricted in this way. Its purpose is to afford protection against the abuse of official authority however exercised, and if the bond does not cover everything the officer does while acting or assuming to act in his official character and within the scope of his official powers, it affords protection for only a very limited number of wrongful acts that may be committed by an officer, when it should afford protection for all of his wrongful acts when acting and assuming to act in his official capacity.

I understand the general rule to be that the liability of sureties is confined to the terms of the undertaking,

but when the undertaking of the bond is that the officer will faithfully perform his duties, or, in other words, will not commit in his official capacity any unlawful or wrongful act, I think this undertaking is, by its very terms, sufficiently broad to cover all acts committed by the officer while acting and assuming to act in his official capacity and within the scope of his official powers. The liability of the bond for the wrongful act of the officer should not depend upon the fact that the officer had a valid writ or the authority of a statute, but on the fact that it was committed while he was acting and assuming to act in his official capacity, and within the scope of his official powers. It should be construed to furnish indemnity for all wrongful or unlawful acts committed by the officer in the assumed performance of his official duties as distinguished from his acts in his individual capacity, and this without regard to whether the acts complained of were committed by him under the authority of a writ or a statute. Many unlawful and wrongful acts are committed by officers in the honest belief that they have, in their official capacity, the lawful right to do the things complained of, and, generally speaking, the acts that give rise to suits like this are not prompted by malice or personal ill-will but arise under a mistaken notion of official authority. But whether the officer does or does not mean to do any wrong, if, in fact, what he does is solely by virtue of his office, or in the performance of the duties of his office, the bond should be liable.

The very purpose of the bond is to afford protection to persons who are mistreated by an officer while acting and assuming to act in his official capacity, and when the bond is construed to embrace all such official acts, the sureties are not made liable for anything that was not in contemplation when they signed the bond or anything that is not fairly embraced by the stipulations of the bond.

It is admitted in the opinion, and indeed by virtually all the authorities, that if an officer has a valid process against "A" but wrongfully takes under it the property of "B," the bond is liable; and so if the officer has a valid warrant for the arrest of "A" but wrongfully arrests "B" the bond is liable. Lammon v. Feusier, 111 U. S., 17, 28 L. Ed., 337; West v. Cabell, 153 U. S., 78, 38 L. Ed., 643; and cases cited in editorial note in 91 Am. St. Rep., 497.

Now it seems to me that this admission demonstrates the weakness and fallacy of the limitation applied in the opinion to the liability of the bond, because if the officer takes the property of "B" on a writ against "A," or arrests "B" on a warrant against "A," he is clearly a mere trespasser. He is not acting under a valid writ or any writ. His act is precisely the same as if he had no writ whatever, for the writ he has affords him no protection for the wrong committed against "B."

I am aware that a few of the courts that hold the bond liable when the officer takes the property of "B" or arrests "B" under a writ against "A," also hold that if he should take the property of "B" or arrest "B" without having any writ, the bond would not be liable. But I must confess my inability to see how this distinction can be made. It seems to me clear that the liability of the bond, when the property of "B" is taken, or he is arrested, under a writ against "A," can be sustained only on the ground that the bond is liable for all the wrongful acts of the officer committed while he is acting and assuming to act in his official capacity, and this is all that I contend for.

Coming now to the authorities, I admit that there is conflict upon this subject, but I think the opinions of this court and many well considered cases decided by other courts support the position I take.

In Commonwealth v. Stockton, 5 T. B. Mon., 192, Davy brought a suit against Stockton, as sheriff, and the sureties in his bond, to recover damages for having illegally levied upon and sold his property to satisfy an execution against one Emerson. The lower court sustained a general demurrer filed by the sureties to the petition. In holding that the sureties were liable, the court said: "The condition of the bond is sufficiently comprehensive to embrace every official duty of the sheriff and must be construed so as to authorize an action thereon against him and his sureties in every case where an action could be maintained against him in his official character." To the same effect are: Forsythe v. Ellis, 4 J. J. Mar., 298; Hill v. Ragland, 114 Ky., 209; Lammon v. Feusier, 111 U. S., 17, 28 L. Ed., 337.

In Commonwealth v. Cole, 7 B. Mon., 250, the suit was against Cole as constable and the sureties in his bond to recover damages for the alleged unlawful acts of Cole in collecting money that he had no right to collect. The court held that the petition was fatally defective be-

cause wanting in several essential allegations; but in the course of the opinion, in speaking of the undertaking of the bond and what acts committed by the constable it covered, said:

"Conceding, as we are disposed to do, that this clause of the condition should receive a most liberal construction, for the protection of the community against fraud, extortion, and every form of oppression incident to an abuse of the official character and powers of a constable, still there must be some reasonable limits to its operation. It cannot cover all acts which the individual may do, while he holds the office of constable, nor even all acts which in their nature pertain to the office, and might under proper circumstances, be rightfully done by a constable. The act must not only be of this nature, but it must at least by done by him as constable, under claim of a right to do the act by virtue of his office. * * * They may perhaps be justly held responsible for such acts within the general range of his powers, as (though without legal authority in the particular instance), he does in the name and by color of the office, and of the rights incident to it."

In Johnson v. Williams, 111 Ky., 289, the action was against the sheriff and the sureties in his bond for the alleged negligent killing of Charles Williams by two of the sheriff's deputies. These deputies, while on the lookout for Dave Browder, who had committed the crime of murder, shot and killed Williams. In sustaining the judgment obtained by the administrator of Williams against the sheriff and his bond, the court said:

"While they did an unlawful act, still they were acting in their official capacity. They had the authority as deputy sheriffs to arrest Browder, but in the exercise of that authority they acted improperly, abusing the confidence which the law imposed in them. They were guilty of misconduct in office, for which their principal and his sureties are liable." And quoting with approval Murfree on Sheriffs, the court said:

"If the act from which the injury resulted was an official act, the authorities are clear that the sheriff is answerable. If it was not an official, but a personal, act, it is equally clear that he is not answerable. But an official act does not mean what a deputy might lawfully do in the execution of his office. If so, no action could ever lie against the sheriff for the misconduct of his deputy. It means, therefore, whatever is done under color or by

virtue of his office. To hold the deputy and his sureties liable to the sheriff on his bond, it is not necessary that the deputy should be acting under color of some writ, but if he is acting under color of his office, and professing so to act, and inducing others interested to believe he is acting *colore officii,* he and his sureties will be bound by such acts. No other rule would be safe. Sureties are not needed on a sheriff's bond, if they are only to be held when he acts legally. They vouch for his acts, and bind themselves to make good any damage he may cause to any one while acting under color of his office. And, if the sheriff and his sureties are bound for such acts of the deputy while acting under color of his office, then the deputy and his sureties are liable to the sheriff for his act.''

In Martin v. Smith, 136 Ky., 804, the suit was against Burrel Smith, marshal of the town of Corbin, and the sureties on his bond for the unlawful killing of Demps Martin. The marshal was attempting to arrest one Charlie Martin, and while so attempting unlawfully and wrongfully, shot Demps Martin, and the court held that the sureties in the bond were liable.

In Growbarger v. U. S. Fidelity & Guaranty Co., 126 Ky., 118, the suit was brought by the administrator of W. L. Growbarger against Stevens, marshal of the town of McHenry, and the sureties in his bond to recover damages for the alleged wrongful killing of Growbarger. The sureties sought to escape liability upon the ground that the undertaking was limited to the official acts of the principal and did not extend to an illegal act done under color of office. It appears from the opinion that Stevens was unnecessarily and maliciously killed by the marshal while under arrest and in his custody, and the court held the sureties liable.

In Commonwealth v. Hurt, 23 Ky. L. R., 1171, an action was instituted by the widow of Granville Lester against Hurt, sheriff of Adair County, and the sureties in his bond for the alleged wrongful killing of her husband of J. Z. Williams, a deputy sheriff. The court in holding that the petition did not state a cause of action, said: ''It is not averred in the petition that the deputy was acting by virtue of his office in the execution of a process, or doing anything in his official capacity at the time of the killing, or that it was done in any attempt to discharge an official duty. A pleading should be construed strongly against the pleader. The averment of the peti-

tion is simply to the effect that while he held the position of deputy sheriff he killed the deceased. One holding the position of sheriff or deputy might kill a man and still not do it in the performance of an official act. The killing might have no connection whatever or relation to the discharge of his official duty.''

In Jewell v. Mills, 3 Bush, 62, it appears from the opinion that Mills, a constable, who had a distress warrant in his hands against Pickering, went to the house of Jewell, who was not in any manner connected with the writ, and after making a forcible entry, took the property of Jewell to satisfy the debt for which the warrant issued. The action was brought against the constable and the sureties in his bond to recover damages for the act of the constable in breaking open the house and cursing, abusing and assaulting the family. On a trial there was a verdict of one cent for Jewell, and he appealed. One of the grounds urged for reversal was the refusal of the trial court to instruct the jury, in substance, that the constable and his sureties were responsible on the official bond for the tortious acts of the constable committed under color of his office, and the court said:

''For *nonfeasance* and unintentional *misfeasance* in office the constable and his sureties would unquestionably be responsible to the party injured, because such would be an official wrong; but for acts of violence, such as are alleged in the petition against Mills, and which are, according to the allegations, personal wrongs, we apprehend the surety is not responsible.''

It will thus be seen that the court separated the official from what it termed the personal acts of the constable and held that his bond was liable for the former but not the latter.

In Shields v. Pflanz, 101 Ky., 407, the suit was brought against the sheriff, Pflanz, for the alleged wrongful act of his deputy, committed in the following manner: A warrant of arrest against Shields was placed in the hands of Pflanz, the sheriff. It was executed by a deputy, who, as alleged, wrongfully and maliciously abused and mistreated Shields while under arrest. A demurrer was sustained to the petition, and, in reversing the case, this court said:

''The contention of appellee is, that as the wrongs complained of were illegal and tortious, the sheriff is not liable. That he is only liable for *nonfeasance* and unintentional *misfeasance.* * * * Taking the averments of

the petition as amended as true, which must be done on demurrer, it appears that Donahue was deputy sheriff under appellee, and that by virtue of the writ, which he had authority to execute, he had arrested the appellant and for a time placed him in custody of the jailer and afterwards took him out for the purpose of taking him to Nelson County in obedience to the writ, and while appellant was in his custody the deputy sheriff perpetrated the wrong and injuries complained of. It is therefore clear that the acts complained of were inflicted by the deputy sheriff under color of his office, and while in the discharge of an official act."

It will be seen from these cases that this court has, in a long and uniform line of decisions, construed official bonds to cover all official acts of the officer and has not in any case limited the liability of the bond to acts committed by the officer while acting directly under the authority of a valid writ or the direction of a statute.

The same rule of construction has been adopted by the courts of Massachusetts, Illinois, Minnesota, Wisconsin, Virginia, West Virginia, and North Dakota. Doubtless the courts of many other States have likewise adopted this rule, but I have not examined the cases.

In Knowlton v. Bartlett, 1 Pick. (Mass.), 270, the suit was against the sheriff to recover money wrongfully collected by and embezzled by his deputy. The defense of the sheriff was that he was not liable, as the deputy was not authorized to collect the money. In holding the sheriff liable, the court said: "If the act from which the injury resulted was an official act, the authorities are clear that the sheriff is answerable; if it was not an official, but a personal act, it is equally clear that he is not answerable. But an official act does not mean what the deputy might lawfully do in the execution of his office; if so, no action would ever lie against the sheriff for the misconduct of his deputy. It means, therefore, whatever is done under color or by virtue of his office.

In Sangster v. Commonwealth, 17 Grattan (Va.), 124, the court said: "The first question presented for our decision in this case is, whether an action can be maintained against a sheriff and his sureties on his official bond, for a trespass committed by him in taking the goods of the relator, on an attachment issued against the property of another?

"We are of opinion that the action can be maintained. The condition of the bond is, for the faithful discharge

of the duties of the office of sheriff, according to law. A sheriff who takes the property of ''A'' under an attachment against the property of ''B,'' thereby not only commits a trespass, but plainly violates the duty of his office and breaks the condition of his official bond. His duty is, to levy the attachment, according to its mandate, on the property of ''B''; instead of doing which, he levies it on the property of ''A.'' He does this in his character of sheriff, *colore officii,* and not as a naked trespasser without color of authority; and it is consistent alike with sound policy and legal principles that he and his sureties in his official bond should be liable to the party injured for all damages arising from the wrongful act.''

In Lucas v. Locke, 11 W. Va., 81, the Supreme Court adopted the rule announced by the Massachusetts and Virginia courts.

In Hall v. Tierney, 89 Minn., 407, suit was brought against the sheriff and his sureties on his official bond to recover damages for bodily injuries alleged to have been received by Hall at the hands of the sheriff. The question was, were the sureties in his bond liable? The cause of action arose in this way: The sheriff, without a writ or the authority of a statute, undertook to remove some property from the premises of Hall, and in so doing assaulted Hall, who was attempting to prevent the removal of his property, and afterwards arrested him. In holding the bond liable, the court said:

''The defendant's official bond now under consideration was conditioned that he should well and faithfully in all things perform and execute the duties of sheriff according to law, and without fraud, deceit, or oppression. If he claimed and pretended to act as sheriff when visiting the plaintiff's premises, surely his conduct while he was assuming to act officially was both unfaithful and oppressive. The distinction between a case where the sheriff acts as an individual, and not by color or virtue of his office, and where he acts as such an officer, is obvious. In the present case the sheriff would have had the right, had he been armed with process of law, to take and remove these cattle. He went to plaintiff's premises for that purpose, demeaning himself as an officer in and about an act which he had a right to perform officially. He could have lawfully seized the cattle, but he was without authority so to do. He was an officer having the right, when armed with proper papers, to seize the cattle; and he professed to have authority, and took the property. He

had no suitable or sufficient process, and his act cannot be distinguished from a taking under a void or insufficient writ." Quoting with approval from Murfree on Official Bonds, Sec. 221, the court said: "The object of an official bond is to obtain indemnity against the misuse of an official position for wrong purpose; and that which is done under color of office, and which would obtain no credit except for its appearing to be a regular official act, is within the protection of the bond, and must be made good by those who signed it."

In Clancy v. Kenworthy, 74 Ia., 740, 7 Am. St. Rep., 508, the action was on the official bond of a constable. As stated in the opinion, "the petition and special verdicts show: (1) That the defendant, J. C. Kenworthy, arrested and imprisoned the plaintiff without a warrant, and filed an information against him for being found in a state of intoxication, and that the defendant, Kenworthy, did all that without probable cause, and without believing that the accused was guilty thereof; (2) That in making said arrest, he acted maliciously, and used excessive force; (3) That in imprisoning the defendant, and in instituting the criminal proceedings and in making the arrest he was actuated by some private and malicious purpose." In holding the bond liable, the court said:

"But it is insisted that, as the constable is shown to have had no lawful authority to arrest plaintiff, his act was therefore not done in the line of his duty. In truth, his act was in the line—direction—of official duty, but was illegal because it was in excess of his duty. In the discharge of official function he violated his duty and oppressed the plaintiff. This is all there is of it. If, in exercising the function of his office, defendant is not liable for acts because they are illegal or forbidden by law, and for that reason are trespasses or wrongs, he cannot be held liable on the bond at all, for the reason that all violations of duty and acts of oppression result in trespasses or wrongs. For lawful acts in discharge of his duty, he of course is not liable. It follows that if defendant's position be sound, no action can be maintained upon the bond in any case."

In City of Lowell v. Parker, 10 Metcalfe (Mass.), 309, 43 Am. Dec., 436, the suit was on the bond of the constable. In holding the bond liable, the court said: "It is objected in the present case that the sureties are not liable, because the constable undertook to make an attachment on a writ, in which the *ad damnum* exceeded

$70, and which, therefore, he had no authority to serve. But we think the objection cannot be sustained. He was an officer, had authority to attach goods on mesne process, on a suitable writ; professed to have such process, and thereupon took the plaintiff's goods; that is, the goods of Bean, for whose use and benefit this action is brought, and who, therefore, may be called the plaintiff. He therefore took the goods under color of office, and though he had no sufficient warrant for taking them, yet he is responsible to third persons, because such taking was a breach of his official duty."

In Greenberg v. People, 225 Ill., 174, 8 L. R. A. (N. S.), 1223, in holding the sureties on a constable's bond liable for an assault by him upon the wife of the execution debtor when she attempted to view property which he had seized for the purpose of aiding her husband in making a schedule thereof, the court held the bond liable in a suit by the wife, pursuing the same line of reasoning followed in the cases cited.

In Lee v. Charmley, 20 North Dakota, 570, 33 L. R. A. (N. S.), 275, the suit was on the bond of a deputy sheriff who falsely claiming to have a warrant for the arrest of a person not charged with any crime, arrested the person and took him into custody. In holding the sureties liable, the court said:

"Charmley went to Brown's house, demeaning himself as an officer, claiming that he had authority for making an arrest, and made the arrest, and compelled Brown to accompany him in his official character. In such character he was authorized to make the arrest if provided with a warrant, or without, in case he had reasonable cause for believing that Brown had committed a felony. He pretended to have such authority, and intimidated, as we may presume, by such pretense, Brown, without resistance, submitted to arrest and to being held in custody. Charmley's official insignia was the means by which he was enabled to accomplish the wrongful act. It may safely be assumed that had he gone at such time and under such circumstances as a private citizen, he would have met with immediate resistance. He abused authority derived wholly from the fact that he held the office of deputy sheriff. An act so performed by a public officer seems to us clearly to have been done under color of office within any accepted definition of that term. Certainly, his act was given a color as distinctive as though he had held a warrant directed against a person other

than Brown, which state of fact, according to the holding of all later authority, constitutes color of office. Viewed from any standpoint, it was gross misbehavior in office, the wrongful character of which was greatly aggravated by reason of being done under pretense of official authority. * * * We think, therefore, that the allegations of the complaint set out a wrongful malfeasance of Charmley, committed under the guise of an official act unquestionably under color of office, and with characteristics which might almost warrant a holding that it was done by virtue of office. Certainly it is such an act as the sureties upon his bond should reasonably be held to have had in contemplation as constituting a breach of its conditions at the time they entered into their undertaking.''

I could extend this opinion by citations of pertinent excerpts from other cases written by this court and the other mentioned courts, but the ones referred to are, I think, sufficient to show that the views I entertain are well supported by authority. That they are sound in principle, I am quite sure. Judge Hannah concurs in this dissent.